UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gilbert Montiel,

      Plaintiff,

v.   Civ. No. 06-331 (JNE/JJG)
    ORDER

Randy Liepold, acting in his individual
capacity as a Worthington Police Officer,

      Defendant.

---

Robert Bennett, Esq., and Eric W. Hageman, Esq., Flynn Gaskins & Bennett, LLP, appeared for Plaintiff Gilbert Montiel.

Jason M. Hiveley, Esq., Iverson Reuvers, LLC, appeared for Defendant Randy Liepold.

---

Gilbert Montiel brought this action against Officer Randy Liepold in his individual capacity under 42 U.S.C. § 1983 (2000) alleging violations of the Fourth Amendment. The case is before the Court on Officer Liepold's motion for summary judgment.[1] For the reasons set forth below, the Court grants in part and denies in part the motion.

### I.    BACKGROUND

On October 7, 2005, Officer Liepold responded to a 911 call made from Montiel's house. The police dispatcher indicated that someone was attempting to break into the house.[2] When Officer Liepold arrived, he observed that the back door was open and heard yelling from inside. Officer Liepold entered the house and saw Montiel, who was intoxicated, standing in the kitchen.

---

[1] Montiel is "withdrawing his Section 1981 claim (Count Two) and his Fourteenth Amendment 'deliberate indifference' claim." Accordingly, those claims are dismissed.

[2] The call actually involved a domestic dispute. Montiel was charged with domestic assault, obstructing legal process, and disorderly conduct. He pled guilty to disorderly conduct.

1

Two women, Montiel's girlfriend and her daughter-in-law, were standing in a bedroom adjacent to the kitchen.

Once inside, Officer Liepold asked to see Montiel's hands and Montiel complied. His hands were empty. At least two more police officers arrived. One officer entered the bedroom with the women. The other officer stayed in the kitchen behind Officer Liepold. Montiel claims that he "came to [his] senses" after the officers arrived. Montiel's girlfriend testified that Montiel "totally quiet[ed] down." Officer Liepold also asked Montiel to place his hands on the kitchen table. Again, Montiel complied. Officer Liepold testified that he approached Montiel to place him in handcuffs and that Montiel struck at his face with his elbow. Montiel denies this and instead testified that he was "just going to my living room to sit down, sleep it out." As Montiel was moving away, Officer Liepold took Montiel to the ground, pulled his hands behind his back, and handcuffed him.[3] Montiel claims that, without any verbal warning to stop, Officer Liepold grabbed his shoulder and, using his knees, slammed him to the floor. Montiel further claims that Officer Liepold then grabbed his arm and thumb, "[t]wisted [his thumb] until it went almost all the way around," and continued "jerking on [his] arm" until his arm "popped out."

After being handcuffed, Montiel was transported to the Nobles County Jail. Montiel claims that he complained that his arm hurt during the transport. During the booking process, Montiel again complained about his arm. The booking officer was unable to fingerprint Montiel because of his injuries and a photograph was taken of his arm. Montiel was placed in an isolation cell because the booking officer believed that Montiel was "pretty sore" and wanted to "keep a closer eye on him." Later that night, the booking officer observed that Montiel's elbow was swollen and that there was a bump on his shoulder. Montiel was sent to an emergency room

---

[3] The record shows that Montiel is 5 feet 7 inches tall and weighs 176 pounds. Officer Liepold is 6 feet 8 inches tall and weighs 285 pounds.

2

where his injuries were observed and the doctor suggested he see a specialist right away. Montiel was released from jail the next day and he returned to the hospital on his own. Montiel's shoulder, elbow, and thumb were dislocated.

## II.     DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In Count One of his Complaint, Montiel asserts a section 1983 claim against Officer Liepold. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Montiel asserts that Officer Liepold used excessive force and failed to seek medical attention in violation of the Fourth Amendment.  Officer Liepold asserts that he is entitled to qualified immunity.

State actors are entitled to qualified immunity when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When faced with an assertion of qualified immunity in a suit against an officer for an alleged constitutional violation, a court must first consider whether the facts, taken in the light most favorable to the party asserting the injury, could show the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  Only if a constitutional violation could be established should the court then consider whether the right was clearly established.  *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.

**A.     Excessive force**

The right to be free from excessive force is clearly established under the Fourth Amendment's prohibition against unreasonable seizures of the person.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).  Excessive force claims are analyzed under an "objective reasonableness standard."  *Graham*, 490 U.S. at 388.  The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397.  Whether an officer's use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.

4

"Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990). In addition, courts may consider the result of the force in analyzing an excessive force claim. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003); *Patzner v. Burkett*, 779 F.2d 1363, 1371 (8th Cir. 1985).

Officer Liepold contends that Montiel was not compliant and that he used force to prevent Montiel from fleeing and potentially confronting the women in the house. Although disputed, there is evidence that the situation was under control shortly after Officer Liepold arrived and before force was used. For example, after Montiel showed Officer Liepold his hands, Officer Liepold radioed to dispatch indicating that the situation was "under control." The second officer on the scene also thought the situation with Montiel was under control. In addition, the record demonstrates that the living room toward which Montiel claims he walked is located in a direction *away from* both where the women and the officers were standing. Yet, Montiel claims that Officer Liepold, without any verbal direction or warning to stop, slammed him to the floor. Further, once on the ground, Montiel claims that Officer Liepold continued to pull on his arm with his knees in his back despite the fact that he did not resist and indicated that he was in pain. Finally, there is evidence that Montiel's injuries will be long-term or permanent. Specifically, medical evidence indicates that Montiel sustained a third-degree separation of the right shoulder, a complex dislocation of the elbow, and a dislocated thumb joint. Montiel's orthopedic expert indicates that Montiel's "acromioclavicular joint is essentially destroyed by the 3rd degree separation" and that his elbow and thumb injuries will result in osteoarthritis in the future. As to the complex dislocation of his elbow, Montiel's orthopedic expert explained that

the force that caused the dislocation "would have to have been substantial and [would have] required a severe valgus or extensive stress over a fulcrum such as a knee."

The Court recognizes that Montiel's movement toward the living room could be interpreted as resistance, which may justify the use of some force.  *See Crumley*, 324 F.3d at 1008; *Foster*, 914 F.2d at 1082.  However, viewing the record in the light most favorable to Montiel, a reasonable factfinder could conclude that the amount of force used was unreasonable and that it would be clear to a reasonable officer that the amount of force used was unlawful. Accordingly, Officer Liepold's motion for summary judgment on Montiel's excessive force claim is denied.

**B.     Failure to seek medical attention**

Montiel also argues that Officer Liepold's failure to seek medical attention for Montiel was unreasonable.  The Court assumes, without deciding, that the Fourth Amendment applies. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596 (7th Cir. 1997); *see also Boone v. Spurgess*, 385 F.3d 923, 933-34 (6th Cir. 2004).  While there is evidence that Montiel indicated to Officer Liepold that his arm hurt, Officer Liepold and Montiel arrived at the jail just minutes after the arrest.  Officer Liepold left soon after and Montiel was processed and screened for medical problems by a different officer.  Montiel does not assert claims against any officer other than Officer Liepold.  Under the circumstances confronted by Officer Liepold, the Court concludes that the failure to seek medical attention for Montiel during the few minutes after the injury occurred and prior to being booked at the jail does not constitute a Fourth Amendment violation.  Therefore, Officer Liepold is entitled to qualified immunity as to Montiel's Fourth Amendment claim for failure to seek medical attention.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 11] is GRANTED IN PART and DENIED IN PART.

2. Montiel's Complaint [Docket No. 1] is DISMISSED with the exception of the excessive force claim.

Dated: July 5, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge